**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>TIFFANY LOPEZ,<br><br>Debtor. | FOR PUBLICATION<br><br>Chapter 13<br><br>Case No. 25-12885 (JPM) |

*APPEARANCES*

**PENACHIO MALARA LLP**
*Counsel for the Debtor Tiffany Lopez*
245 Main Street, Suite 450
White Plains, NY 10601
By: Anne J. Penachio

**MARGOLIN, WEINREB & NIERER, LLP**
*Counsel for Carrington Mortgage Services, LLC*
575 Underhill Boulevard, Suite 224
Syosset, New York 11791
By: Seth D. Weinberg

**CHAPTER 13 TRUSTEE**
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Suite 102
White Plains, NY 10603
By: Rebecca A. Richards

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004

**MEMORANDUM OPINION AND ORDER DENYING THE**
**DEBTOR'S MOTION TO AVOID LIEN**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

This matter arises from the Chapter 13 case of Tiffany Lopez (the "**Debtor**").  Before the Court is the Debtor's motion (the "**Motion**"), dated February 13, 2026, seeking entry of an order under 11 U.S.C. § 506(a) avoiding the mortgage lien held by Carrington Mortgage Services, LLC ("**Carrington**").  (Dkt. No. 15).  Specifically, the Debtor requests that Carrington's asserted secured claim of $571,038.13 be treated as unsecured to the extent it exceeds the asserted value of the Debtor's property, resulting in an unsecured deficiency claim of $83,538.13.  (*Id*.).

On March 11, 2026, Carrington filed a declaration in opposition to the Debtor's Motion (the "**Response**"), arguing that the Debtor's valuation is unsupported by evidence, and that the Debtor cannot use § 506(a) to avoid Carrington's lien before foreclosure.  (Dkt. No. 18).  The Debtor replied on March 17, 2026 (the "**Reply**"), contending that her valuation is admissible as lay opinion under Federal Rule of Evidence 701 and that § 506(a) permits the Court to determine the secured and unsecured portions of Carrington's claim regardless of foreclosure.  (Dkt. No. 20).  The Court held a hearing on April 23, 2026 to consider the Motion (the "**Hearing**").

Having reviewed the parties' submissions, the arguments presented at the Hearing, and the record as a whole, the Court finds that the Debtor has failed to establish a sufficient basis to avoid Carrington's lien or reclassify any portion of Carrington's secured claim as unsecured.  For the reasons below, the Motion is **DENIED**.

## II.    BACKGROUND

The Debtor owns a single-family home located at 185 Sportsman Ave, Freeport, New York (the "**Property**").  The Property is encumbered by a mortgage loan held by Carrington, with a principal balance of $315,921.30 and an annual interest rate of 4.75%.  (Dkt. No. 18).  After the

1

Debtor defaulted on the loan, Carrington commenced a foreclosure action on March 16, 2023, in the Supreme Court of the State of New York, Nassau County (the "**State Court**"). (*Id*.). *See Carrington Mortgage Services, LLC v. Lopez*, Index No. 604471-2023 (Sup. Ct. Nassau Cnty. Mar. 16, 2023).

On August 1, 2024, the State Court entered a judgment of foreclosure in Carrington's favor, finding the Debtor liable for total arrears of $483,349.08, including interest, and authorizing a sale of the Property. (*Id*. Ex. C). A foreclosure sale was scheduled for October 21, 2024. (*Id*. ¶ 8). Before the sale occurred, the Debtor sought emergency relief by order to show cause to stay the foreclosure, which the State Court granted pending a hearing. (*Id*.). The hearing was then adjourned several times. (*Id*.).

Before the foreclosure sale occurred, the Debtor filed for Chapter 13 relief in this Court on December 24, 2025. (Dkt. No. 1). The Debtor's schedules value the Property at approximately $248,000.00. (*Id*. Schedule A/B). In the Motion, however, the Debtor values the Property at $487,500.00. (Dkt. No. 15, ¶ 7; *see also* Dkt. No. 20, Ex. A). Carrington filed a proof of claim asserting a secured claim in the amount of $571,038.13, reflecting the total pre-petition arrears. (*See* Proof of Claim No. 5).

On February 13, 2026, the Debtor filed the Motion seeking to avoid Carrington's lien on the Property. (Dkt. No. 15). The Debtor represents that she has surrendered the Property under her Chapter 13 plan and does not intend to retain it. Because she no longer intends to retain the Property, the Debtor argues that Carrington "is not secured in any property in which the Debtor has an interest" and therefore holds only an "unsecured deficiency claim" under § 506(a). (*Id*. ¶ 14-16). Relying on *In re Sneijder*, 407 B.R. 46, 48 (Bankr. S.D.N.Y. 2009), the Debtor argues that

2

"[w]hatever the court determines the value of the lien to be, the excess would be the unsecured deficiency." (Dkt. No. 15, ¶ 17).

On March 11, 2026, Carrington filed the Response. (Dkt. No. 18). Carrington argues that the Debtor's valuation is based solely on lay opinion and is unsupported by admissible evidence. Carrington also submits an appraisal report valuing the Property at $255,000.00. (*Id*.). Carrington further contends that the Debtor's reliance on *Sneijder* is misplaced because valuation under § 506(a) must be tied to the proposed disposition or use of the collateral and, where the debtor has surrendered the property, any deficiency cannot be determined until the creditor liquidates the collateral through foreclosure or other state-law remedies. (*Id*.).

On March 17, 2026, the Debtor filed the Reply. (Dkt. No. 20). The Debtor argues that Carrington's $255,000.00 valuation is outdated because it is based on an appraisal conducted in December 2024. (*Id*. ¶ 5). The Debtor asserts that her $487,500.00 valuation is based on a debtor affirmation to be filed in connection with the Motion, and that such testimony would be admissible as lay opinion under Federal Rule of Evidence 701. (Dkt. No. 15, ¶¶ 7, 18; *see also* Dkt. No. 20, ¶ 5). To date, however, the Debtor has not filed that affirmation.

## III. <u>LEGAL STANDARD</u>

Section 506(a) of the Bankruptcy Code "describes the extent to which an allowed claim is to be treated as a secured claim and how a secured claim is valued." *In re Residential Capital, LLC*, 497 B.R. 403, 412 (Bankr. S.D.N.Y. 2013). That section provides, in relevant part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, … as the case may be, and *is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim*. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added).

In *United Savings Association*, the Supreme Court held that the phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988); *see also LNC Invs., Inc. v. First Fidelity Bank*, 247 B.R. 38, 44 (S.D.N.Y. 2000). Thus, under § 506(a), a claim secured by a lien on estate property is treated as secured only to the extent of the value of collateral; any amount exceeding the value of the collateral is treated as unsecured. *See In re Menorah Congregation & Religious Ctr.*, 554 B.R. 675, 680 n.1 (Bankr. S.D.N.Y. 2016) (citing 11 U.S.C. § 506(a)(1)).

In valuing a secured creditor's claim, § 506(a)(1) requires that the value be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property." *In re Motors Liquidation Co.*, 482 B.R. 485, 490 (Bankr. S.D.N.Y. 2012) (citing 11 U.S.C. § 506(a)(1)). As legislative history shows, Congress intended that valuation under § 506(a) to proceed on a case-by-case basis: "Value does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case." *Residential Capital*, 497 B.R. at 412 (quoting H.R. Rep No. 95-595, 95th Cong., 1st Sess. 356 (1977)).

Section 506(a), however, does not itself avoid liens. *See In re Walker*, No. 17-36804 (CGM), 2018 WL 3752995, at *2 (Bankr. S.D.N.Y. Aug. 6, 2018) (holding that "a secured creditor's lien may not be avoided" under § 506); *see also In re Orkwis*, 457 B.R. 243, 247 (Bankr. E.D.N.Y. 2011) ("The valuation [under § 506(a)] does not in and of itself 'avoid' any liens."). Rather, § 506(a) merely "classifies creditors' allowed claims into secured and unsecured claims

through the valuation of the collateral securing the claim."[1] *In re Hopper*, No. 21-70139-REG, 2021 WL 3435445, at *3 (Bankr. E.D.N.Y. Aug. 5, 2021).

In Chapter 13, that classification is subject to the anti-modification provision in § 1322(b)(2), which prohibits a plan from modifying "the rights of holders of secured claims" secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2); *see also In re Pond*, 252 F.3d 122, 125 (2d Cir. 2001). In *Nobelman*, the Supreme Court held that a Chapter 13 debtor may not strip down a partially secured mortgage on the debtor's principal residence to the value of the collateral. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327-32 (1993); *see also In re Wright*, 460 B.R. 581, 583 (Bankr. E.D.N.Y. 2011). There, the debtor sought to bifurcate an undersecured residential mortgage lien into secured and unsecured portions, so that only the secured portion would be protected under § 1322(b)(2). *See*

---

[1]  When a debtor seeks to avoid a lien as part of claim valuation, courts often read § 506(a) in conjunction with § 506(d). Section 506(d) provides that, "[t]o the extent a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void[.]"  11 U.S.C. § 506(d). Before the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), some courts had understood § 506(d) to authorize "lien-stripping," including reducing an undersecured lien to the value of the collateral. *See, e.g.*, *In re O'Leary*, 75 B.R. 881, 885 (Bankr. D. Or. 1987) ("A plain reading of § 506(a) and § 506(d) allows the plaintiffs to avoid the undersecured portion of defendant's mortgage."); *In re Leavell*, 124 B.R. 535, 538 (Bankr. S.D. Ill. 1991) ("Read together, § 506(a) and (d) allow for the avoidance of liens to the extent they exceed the value of the underlying security.").

That is no longer the case. In *Dewsnup*, the Supreme Court held that § 506(d) does not permit a debtor to strip down an allowed claim secured by a lien, even where the value of the collateral is less than the amount of the debt. *See Dewsnup*, 502 U.S. at 417 ("Therefore, we hold that § 506(d) does not allow petitioner to 'strip down' respondents' lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502."). As one court explained, before *Dewsnup*, § 506(d) "had been generally understood to mean that a debtor or trustee could ask the court to void a lien associated with an undersecured claim to the extent that [the lien] exceeded the amount of the allowed secured claim, thereby limiting the lien to the secured portion." *Dever v. IRS (In re Dever)*, 164 B.R. 132, 135 (Bankr. C.D. Cal. 1994). After *Dewsnup*, however, "[s]ection 506(d) now serves the reduced function of voiding a lien only when the claim it secures has not been allowed." *Walker*, 2018 WL 3752995, at *2 (citing *Bank of America, N.A. v. Caulkett*, 575 U.S. 790, 797 (2015)).

5

*Nobelman*, 508 U.S. at 326.  The Supreme Court rejected that argument, holding that because the mortgagee was the holder of a "claim secured only by a lien on the debtor's principal residence," the mortgagee's rights in the entire lien were protected from modification under § 1322(b)(2).  *Id*. at 328-31.  Thus, under *Nobelman*, where a mortgage is secured only by the debtor's principal residence, § 1322(b)(2) protects the mortgagee's rights from modification even if the claim is undersecured.

Where a debtor elects to surrender collateral under § 1325(a)(5)(C), the creditor retains its lien and may pursue state-law remedies, including foreclosure and sale.  *See First Brandon Nat'l Bank v. Kerwin (In re Kerwin)*, 996 F.2d 552, 557 (2d Cir. 1993) ("When the debtor elects to surrender the collateral under [§ 1325(a)(5)(C)], the secured creditor takes possession of the property and sells it in accordance with non-bankruptcy law.").  "Surrender" does not transfer title, extinguish the lien, or require immediate physical turnover.  It requires only that the debtor make the collateral available to the secured creditor.  *See In re McCann*, 537 B.R. 172, 178 (Bankr. S.D.N.Y. 2015) (quoting *In re Plummer*, 513 B.R. 135, 143 (Bankr. M.D. Fla. 2014)).  After liquidation under non-bankruptcy law, any deficiency claim may be asserted as unsecured, subject to allowance under § 502.  *See In re Pinti*, 363 B.R. 369, 378 (Bankr. S.D.N.Y. 2007) (holding that, after a debtor surrenders collateral under § 1325(a)(5)(C), "[t]he creditor is … free to liquidate the collateral, and to return for the deficiency, as allowed under state law, as an unsecured claim").

## IV.    ANALYSIS

At issue is whether the Debtor may, after proposing to surrender the Property under her Chapter 13 plan, invoke § 506(a) to reduce Carrington's secured claim of $571,038.13 into an unsecured deficiency claim of $83,538.13—the amount by which Carrington's claim exceeds the Debtor's asserted property value of $487,500.00.  The Court finds that the Debtor may not do so.

6

The Debtor's Motion rests on two premises: first, that the Court should value the Property now for purposes of § 506(a), even though the Property has not yet been surrendered and Carrington has not exercised its foreclosure rights under state law; and second, that the Court may use that valuation to avoid Carrington's lien or fix the amount of an unsecured deficiency before foreclosure. As explained below, neither premise is supported by the Bankruptcy Code.

**A. Section 506(a) Does Not Support Pre-Foreclosure Valuation Where the Debtor Has Elected to Surrender the Property**

Section 506(a) permits a bankruptcy court to value the secured and unsecured portions of an allowed claim. *See United Sav. Ass'n*, 484 U.S. at 372 (citing 11 U.S.C. § 506(a)). However, "valuation under § 506(a) cannot be done in a vacuum." *In re Miller*, 462 B.R. 421, 428 (Bankr. E.D.N.Y. 2011). Section 506(a) permits valuation only "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a). Valuation under § 506(a), in other words, is "context sensitive" and must correspond to the proposed treatment of the collateral in each case. *Sneijder*, 407 B.R. at 52 (citing 4 COLLIER ON BANKRUPTCY ¶ 506.03 (15th ed. 2007)).

Here, the Debtor elects to surrender the Property and seeks valuation under § 506(a) on that basis. That election matters. As the Supreme Court has made clear in *Rash*, courts value collateral differently depending on whether the debtor retains or surrenders the property. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997). *Rash* held that, where a Chapter 13 debtor proposed to retain collateral under § 1325(a)(5)(B), replacement value, rather than foreclosure value, is the appropriate valuation standard under § 506(a). *See id*. at 962-63. Where, as here, a debtor proposes to surrender collateral under § 1325(a)(5)(C), foreclosure value is the most appropriate valuation methodology. *See id*.

7

"Where the chapter 13 plan calls for surrender under § 1325(a)(5)(C), the debtor must obtain consent of the secured creditors for surrender in full satisfaction or provide for any unsecured deficiency in the plan." *Sneijder*, 407 B.R. at 53. But the deficiency amount may not be fixed by the Debtor's unilateral pre-foreclosure valuation. To determine any unsecured deficiency, the creditor must first exercise its foreclosure rights under state law, liquidate the collateral in a foreclosure sale, and apply the sale proceeds to the debt. If the sale produces a deficiency, the creditor may then "assert the amount of the deficiency as an unsecured claim against the debtor's remaining assets." *Kerwin*, 996 F.2d at 557; *see also Pinti*, 363 B.R. at 378 (holding that, after foreclosure, any deficiency may be asserted as an unsecured claim, subject to allowance under § 502); *In re Stockwell*, 33 B.R. 303, 305 (Bankr. D. Or. 1983) ("If the debtor surrenders his interest in the property securing the claim, the court can find that the requirements of § 1325(a)(5) have been met. The creditor may then foreclose his lien and file an unsecured claim for his actual or expected deficiency.").

The Debtor has that sequence backwards. Here, the Debtor seeks to fix an unsecured deficiency claim, based on her own asserted valuation of the Property, before Carrington has obtained possession of the surrendered Property or completed a foreclosure sale. Section 506(a) does not permit that result. *See, e.g.*, *Kerwin*, 996 F.2d at 557; *Pinti*, 363 B.R. at 378; *Stockwell*, 33 B.R. at 305. Because the Debtor proposes to surrender the Property, the relevant disposition is foreclosure or other liquidation under applicable state law. Any unsecured deficiency must be determined after that process occurs, not by preemptive valuation on the Debtor's Motion.

**B. The Debtor May Not Invoke § 506(a) to Avoid Carrington's Lien or Override the Anti-Modification Provision Under § 1322(b)(2)**

The Motion also fails because § 506(a) does not itself avoid liens. Section 506(a) merely classifies claims as secured or unsecured for bankruptcy purposes; it does not extinguish or reduce

8

the underlying lien. *See Orkwis*, 457 B.R. at 247. As *Walker* makes clear, "a secured creditor's lien may not be avoided" under § 506(a). *See Walker*, 2018 WL 3752995, at *2. Thus, even if the Court were to value the Property under § 506(a), that valuation would not, by itself, avoid Carrington's mortgage lien.

Nor can the Debtor use § 506(a) to accomplish indirectly what § 1322(b)(2) prohibits. Carrington's mortgage is secured by the Debtor's principal residence. Under § 1322(b)(2), a Chapter 13 plan may not modify the rights of a creditor whose claim is secured only by a security interest in the debtor's principal residence. *See* 11 U.S.C. § 1322(b)(2). In *Nobelman*, the Supreme Court held that § 1322(b)(2) protects from modification the creditor's *entire* claim on a lien secured by the debtor's principal residence even if the lien is undersecured. *See Nobelman*, 508 U.S. at 327-32. Post-*Nobelman*, courts have consistently held that a mortgage lien may be avoided notwithstanding § 1322(b)(2) only if the lien is "wholly unsecured." *See, e.g.*, *Pond*, 252 F.3d at 126 (holding that only a "wholly unsecured claim, as defined under section 506(a), is not protected under the antimodification exception of section 1322(b)(2)" and could be stripped off in a Chapter 13 case); *In re Wapshare*, 492 B.R. 211, 215 (Bankr. S.D.N.Y. 2013) (noting that "wholly unsecured junior mortgages are 'worthless' and are therefore unsecured claims under § 506(a)"). Here, under either the Debtor's or Carrington's valuation, Carrington's lien remains at least partially secured. Thus, Carrington's lien is protected by § 1322(b)(2), and the Debtor may not modify Carrington's rights in the manner requested.

The Debtor's reliance on *Sneijder* does not alter that conclusion. The Debtor misconstrues that decision. *Sneijder* merely recites the general rule that, where valuation under § 506(a) is appropriate, the portion of a secured creditor's claim exceeding the value of the collateral may be treated as an unsecured deficiency. *See Sneijder*, 407 B.R. at 48. But *Sneijder* does not authorize

9

the Debtor to unilaterally fix the amount of a deficiency before the creditor has exercised its state-law remedies against surrendered collateral.  Nor does *Sneijder* permit a debtor to circumvent the anti-modification protection afforded to residential mortgage lenders under § 1322(b)(2).  Thus, *Sneijder* provides no basis to avoid Carrington's lien, strip down its mortgage, or reclassify any portion of its claim as unsecured at this stage.

Accordingly, § 506(a) does not support the relief requested in the Motion.  In light of the Debtor's proposed surrender of the Property, Carrington retains its lien and may pursue foreclosure or other remedies under applicable state law.  After foreclosure, Carrington may then assert any resulting deficiency, if applicable, as an unsecured claim, subject to allowance under § 502.  The Debtor may not use § 506(a) to determine that deficiency in advance of foreclosure.

## V.    CONCLUSION

For the foregoing reasons, the Court finds that the Debtor has failed to establish a sufficient basis under § 506(a) to avoid Carrington's lien or reclassify any portion of Carrington's claim as unsecured before foreclosure of the surrendered Property.

Accordingly, the Motion is **DENIED**.

Dated: May 20, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

10